CSD 1000 [12/01/03]

Name, Address, Telephone No. & I.D. No.

LAW OFFICES OF JUSTIN MURPHY
402 W BROADWAY
Suite 800      619-847-6873
San Diego Ca 92101

**FILED**

2017 NOV -9  PM 2:37

CLERK
U.S. BANKRUPTCY CT
SO DIST. OF CALIF. 41

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West F Street, San Diego, California 92101-6991

In Re

MELEK TZADIK COVENANT
HOLDINGS

Tax I.D.(EIN)#: 474755444 /S.S.#:XXX-XX-____    Debtor.

BANKRUPTCY NO. 17-6624-LA11

[add if filing in response to hearing]
Date of Hearing:
Time of Hearing:
Name of Judge:

EXHIBITS A-Z

VALUATION ESTIMATE, etc. FOR

MELEK TZADIK COVENANT
HOLDINGS

43

CSD 1000

6624 Ex

17-6624

**Exhibit A**

**Valuation Estimate for Meirek Tzarik Covenant Holdings**



November 7, 2017


Jeffrey Coley, Broker
Elite Real Estate, Inc.
1928 College Blvd. # 175
Oceanside, CA 92056

### BPO – Broker's Price Opinion


Property Address:     32768 Via Del Venando, Valley Center, CA 92082
Assessors Parcel#:     128-170-47-00 / 128-170-48-00
Property Owner:     **Melek Tzadik Covenant Holdings**
Occupancy Type:     Owner Occupied
Property Type:     SFR / Rural / Agricultural


Livable Sq. Feet:     1875

Bed / Bath Count:     2 / 2

Actual Lot Size:     10 Acres

Roof Type:     Ceramic Tile



*PROPERTY ESTIMATED VALUE: **$635,000.00**




Jeffrey Thomas Coley, Broker
BRE#01131349, #01449144
Ph:(442)224-4271
Email: jcoley33@gmail.com

**Exhibit B**

**<ins>Financial Statement for Melek Tzadik Covenant Holdings</ins>**

| Category | Expenses | Category | Income |
|---|---|---|---|
| Water | 273.99 | Income: | 5,726 |
| Electricity | 200.00 | | |
| Auto Insurance | 138.07 | | |
| Farmers Insurance | 178.16 | | |
| Travel | 200.00 | | |
| Internet | 44.94 | | |
| Edco | 65.93 | | |
| Kiddush | 300.00 | | |
| Wells Fargo Mortgage | 3,844.57 | | |
| **Total Balance:** | **$5195.66** | **Total Balance:** | **$5,726** | **Net : $530.34** |

**Exhibit B-1**

**<u>Balance Sheet for Melek Tzadik Covenant Holdings</u>**
**As of 11/8/2017**

| Month | Income | Expenses | Net |
|---|---|---|---|
| May | $5,726 | $5195.66 | $530.34 |
| June | $5,726 | $5195.66 | $530.34 |
| July | $5,726 | $5195.66 | $530.34 |
| August | $5,726 | $5195.66 | $530.34 |
| September | $5,726 | $5195.66 | $530.34 |
| November | $5,726 | $5195.66 | $530.34 |
|  |  |  |  |
| Total Balance | $34,356 | $31,173.96 | $3,182.04 |

**Exhibit B-2**

## Statement of Income (Loss) for Melek Tzadik Covenant Holdings
## Period Ending 11/8/2017

Note:  There is no prior fiscal year.

| Month | Income | Expenses | Net |
|---|---|---|---|
| May | $5,726 | $5195.66 | $530.34 |
| June | $5,726 | $5195.66 | $530.34 |
| July | $5,726 | $5195.66 | $530.34 |
| August | $5,726 | $5195.66 | $530.34 |
| September | $5,726 | $5195.66 | $530.34 |
| November | $5,726 | $5195.66 | $530.34 |
| | | | |
| Total Balance | $34,356 | $31,173.96 | $3,182.04 |

**Exhibit B-3**

**<u>Statement of Cash Flows for Melek Tzadik Covenant Holdings</u>**
**For the Period ending 11/08/2017**

| Month | Income | Expenses | Net |
|---|---|---|---|
| May | $5,726 | $5195.66 | $530.34 |
| June | $5,726 | $5195.66 | $530.34 |
| July | $5,726 | $5195.66 | $530.34 |
| August | $5,726 | $5195.66 | $530.34 |
| September | $5,726 | $5195.66 | $530.34 |
| November | $5,726 | $5195.66 | $530.34 |
| | | | |
| Total Balance | $34,356 | $31,173.96 | $3,182.04 |

**Exhibit C**

**<u>Statement of Changes in Shareholder's Equity for</u>**
**<u>Melek Tzadik Covenant Holdings</u>**
**Period ending 11/08/2017**

**<u>Not Applicable</u>**

**Exhibit B-5**

## **Description of Operations for**
## **Melek Tzadik Covenant Holdings**
## **Period ending 11/08/2017**

The specific purpose for which the corporation is  for the exclusive purpose of holding title to property, collecting income there from, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under IRC 501(a).

**Exhibit B**

## Financial Statement for Melek Tzadik Covenant Holdings

| Category | Expenses | Category | Income |
|---|---|---|---|
| Water | 273.99 | Income: | 5,726 |
| Electricity | 200.00 | | |
| Auto Insurance | 138.07 | | |
| Farmers Insurance | 178.16 | | |
| Travel | 200.00 | | |
| Internet | 44.94 | | |
| Edco | 65.93 | | |
| Kiddush | 300.00 | | |
| Wells Fargo Mortgage | 3,844.57 | | |
| **Total Balance:** | **$5195.66** | **Total Balance:** | **$5,726** |

**Net : $530.34**

**Exhibit B-1**

**Balance Sheet for Melek Tzadik Covenant Holdings**
**As of 11/8/2017**

| Month | Income | Expenses | Net |
|---|---|---|---|
| May | $5,726 | $5195.66 | $530.34 |
| June | $5,726 | $5195.66 | $530.34 |
| July | $5,726 | $5195.66 | $530.34 |
| August | $5,726 | $5195.66 | $530.34 |
| September | $5,726 | $5195.66 | $530.34 |
| November | $5,726 | $5195.66 | $530.34 |
| | | | |
| Total Balance | $34,356 | $31,173.96 | $3,182.04 |

**Exhibit B-2**

**Statement of Income (Loss) for Melek Tzadik Covenant Holdings**
**Period Ending 11/8/2017**

Note:  There is no prior fiscal year.

| Month | Income | Expenses | Net |
|---|---|---|---|
| May | $5,726 | $5195.66 | $530.34 |
| June | $5,726 | $5195.66 | $530.34 |
| July | $5,726 | $5195.66 | $530.34 |
| August | $5,726 | $5195.66 | $530.34 |
| September | $5,726 | $5195.66 | $530.34 |
| November | $5,726 | $5195.66 | $530.34 |
| | | | |
| Total Balance | $34,356 | $31,173.96 | $3,182.04 |

**Exhibit B-3**

## Statement of Cash Flows for Melek Tzadik Covenant Holdings
### For the Period ending 11/08/2017

| Month | Income | Expenses | Net |
|---|---|---|---|
| May | $5,726 | $5195.66 | $530.34 |
| June | $5,726 | $5195.66 | $530.34 |
| July | $5,726 | $5195.66 | $530.34 |
| August | $5,726 | $5195.66 | $530.34 |
| September | $5,726 | $5195.66 | $530.34 |
| November | $5,726 | $5195.66 | $530.34 |
|  |  |  |  |
| Total Balance | $34,356 | $31,173.96 | $3,182.04 |

**Exhibit C**

**Statement of Changes in Shareholder's Equity for
Melek Tzadik Covenant Holdings
Period ending 11/08/2017**

**Not Applicable**

**Exhibit B-5**

<u>**Description of Operations for**</u>
<u>**Melek Tzadik Covenant Holdings**</u>
**Period ending 11/08/2017**


The specific purpose for which the corporation is  for the exclusive purpose of holding title to property, collecting income there from, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under IRC 501(a).

3835156

# Articles of Incorporation
## Melek Tzadik Covenant Holdings, Inc.

FILED
Secretary of State
State of California
OCT 1 6 2015

## Article 1 Name

The name of this corporation shall be Melek Tzadik Covenant Holdings, Inc.

## Article 2 Addresses

The street and mailing address of the corporation is:

970 West Valley Pkwy.
#170
Escondido, CA 92025

## Article 3 Type Of Corporation And Purpose

This corporation is a RELIGIOUS CORPORATION and is not organized for the private gain of any person. It is organized under the Nonprofit Religious Corporation Law exclusively for religious purposes.

The specific purpose for which the corporation is initially organized is to be a community development center serving our local community by engaging in a broad range of strategies that promote community health and development and to also engage in activities which are necessary, suitable or convenient for the accomplishment of that purpose, or which are incidental thereto or connected therewith which are consistent with Section 501(c)(3) of the Internal Revenue Code.  This corporation is organized and operated exclusively for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or to any corresponding provision of any future federal tax law.

## Article 4 Initial Agent

The name of this corporation's initial agent for service of process is Ben-Hayil Yellen, and the street address in the State of California of the initial agent of this corporation is:

970 West Valley Pkwy.
#170
Escondido, CA 92025

## Article 5 Non Profit Corporation

No part of the net earnings of the corporation shall ever inure to the benefit of, or be distributable to its members, directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for

3835156

services rendered and to make payments and distributions in furtherance of the purposes set forth in Article 3. No substantial part of the activities of the corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on: (a) by a corporation exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code of 1986 or the corresponding provision of any future United States Internal Revenue law or: (b) by a corporation, contributions to which are deductible under Section 170(c) of the Internal Revenue Code of 1986 or the corresponding provisions of any future United States Internal Revenue laws.

## Article 6 Property Of Corporation And Dissolution

The property of this corporation is irrevocably dedicated to the purposes listed in Article 3 and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer, or member thereof or to the benefit of any private person. Upon the dissolution or winding up of the corporation, its assets remaining after payment, or provision for payment, on all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for charitable, educational and/or religious purposes and which has established its tax exempt status under Section 501(c)(3), Internal Revenue Code.

## Article 7 Directors

The initial directors whose positions and duties are set forth in the bylaws will manage the affairs of this corporation until the directors are elected. The number of Initial Directors shall be three (3).

The names and addresses of the individuals who are to serve as the initial directors are as follows:

Ben-Hayil Yellen
970 West Valley Pkwy.
#170
Escondido, CA 92025

Heidi Crawford
970 West Valley Pkwy
#170
Escondido, CA 92025

Patricia Waggerby
32768 Via del Venado
Valley Center, CA 92082

3835156

_Ben-Havil Yellen, Initial Director_       _Heidi Crawford, Initial Director_       _Patricia Waggerby, Initial Director_

It is hereby declared that I am(We are) the person(s) who executed this instrument which execution is my(our) act and deed.

_Ben-Havil Yellen, Initial Director_       _Heidi Crawford, Initial Director_       _Patricia Waggerby, Initial Director_

Articles of Incorporation | 3 of 3

I hereby certify that the foregoing transcript of ___3___ page(s) is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.

OCT 2 1 2015

Date:_____

ALEX PADILLA, Secretary of State

# Bylaws

## Melek Tzadik Covenant Holdings, Inc.

# Bylaws

## Preamble

WHEREAS, it is the express purpose of God is to spread the Message of restoration and to heal the world, and to contribute to the community of faith, built and established on the foundation of patriarchs and prophets, and kings, the High Priest of the Levitical priesthood is the custodianship of the Chief Cornerstone.

WHEREAS, the members of the community of the Hebrews are enjoined to assemble themselves together for worship, fellowship, counsel, and instruction in the Torah writings and Sacred texts of God and the work of the ministry and for the exercise of those spiritual gifts and offices provided for in the sacred texts of the prophets, therefore,

BE IT RESOLVED, that we recognize ourselves a community of Hebrews working together for the common purpose of spreading the Message of restoration and healing of the mind, body and soul, and that under the laws of the State of California we may exercise all the rights and privileges granted to religious bodies.

## Article I Nonprofit Purposes

### Section 1: General purpose

a. This corporation is organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to the sole member which itself is described in IRC section 501(a).

b. To exercise the rights, powers and duties of a corporation that is not for profit organized under the laws of the state of California in a manner that is consistent with paragraph a above.

## Article II Members

### Section 1: Sole member

The sole member of this corporation shall be Hebrew Conservative Union, Inc., a not for profit corporation formed under the laws of the state of California which itself is described under section 501(c)(3) of the Internal Revenue Code.

### Section 2: Suspension of membership

The sole member shall not be suspended or terminated for any reason whatsoever.

### Section 3: Power of the member

The sole member shall have the power to appoint and remove the Board of Directors.

### Section 4: Meetings

a.  Meetings of the member shall be held at the principal office of the corporation or at any place designated by the sole member.

b.  A regular meeting of the sole member shall be held annually within the first month of the year.

c.  Special meetings may be called by the Board of Directors with 10 days notice.

d.  Action permitted to be taken by the member may be done without a meeting. Written consent shall be deemed as a meeting and recorded in the minutes of the member meetings.

e.  The sole member may designate in writing to the secretary of the Board of Directors a person to represent the sole member.

### Section 5: Amendments to this article

Amendments to this article may be made by a simple majority vote of the sole member. No other group, including the Board of Directors of Melek Tzadik Covenant Holdings, Inc. has the authority to amend this article.

# Article III Board Of Directors

## Section 1: Number

The corporation shall have no less than three (3) directors and collectively they shall be known as the Board of Directors. The Board of Directors shall consist of a President, who shall also be the chairperson of the Board of Directors, a Secretary and a Treasurer. The number of directors may be increased from time to time by the sole member.

## Section 2: Qualifications

Directors shall be of the age of majority in this state.

## Section 3: Powers

a.  Subject to the provisions of the laws of this state and any limitations in the articles of incorporation and these bylaws relating to action required or permitted to be taken or approved by the member of this corporation, the activities and affairs of this corporation shall be conducted and all corporate powers shall be exercised by or under the direction of the Board of Directors.

b.  The Board of Directors shall manage, control and dictate the affairs of the corporation. It shall also adopt policies and procedures, not inconsistent with the laws that allow it to conduct its affairs.

c.  The Board of Directors shall manage all of the funds and property, (real or personal) as they may deem in the best interest of the corporation.

## Section 4: Duties

It shall be the duty of the directors to:

a.  Perform any and all duties imposed on them collectively or individually by law, by the articles of incorporation, or by these bylaws;

b.  Appoint and remove, employ and discharge, and, except as otherwise provided in these bylaws, prescribe the duties and fix the compensation, if any, of all officers, agents, and employees of the corporation;

c.  Supervise all officers, agents, and employees of the corporation to assure that their duties are performed properly;

d.  Meet at such times and places as required by these bylaws;

e.  Register their addresses with the secretary of the corporation and notices of meetings mailed, emailed or telephoned to them at such address shall be valid notices thereof.

## Section 5: Term of Office

The term of office of all Board of Director members shall be reviewed every year. The number of consecutive terms that he/she may serve is unlimited. He/She is subject to removal at any time in accordance with section 6 of this Article.

## Section 6: Appointment and removal

Directors shall be appointed by the sole member.  Any director may be removed with or without cause by the sole member at any time. Any officer may be removed, either with or without cause, by  the sole member, at any time.

## Section 7: Compensation

Directors shall serve without compensation except that a reasonable fee may be paid to directors for attending regular and special meetings of the Board of Directors. In addition, they shall be allowed reasonable advancement or reimbursement of expenses incurred in the performance of their duties.

## Section 8: Vacancies

a.  Vacancies on the Board of Directors shall exist (1) on the death, resignation or removal of any director, and (2) whenever the number of authorized directors is increased.

b.  Any director may resign effective upon giving written notice to the chairperson of the Board of Directors, unless the notice specifies a later time for the effectiveness of such resignation.

## Article IV Board Of Directors Meetings

Meetings shall be held at the principal office of the corporation unless otherwise provided by the Board of Directors or at such other places as may be designated from time to time by resolution of the Board of Directors.

### Section 1: Regular Meetings

The sole member must be notified in writing of any regular meeting of the corporation a minimum of 10 days prior to the meeting taking place.

The representative of the sole member shall attend any meeting of Melek Tzadik Covenant Holdings, Inc. at his/her discretion.

The corporation year shall coincide with the calendar year beginning on January 1st, and running through December 31st.

The President will call the official board meeting to discuss the direction of the corporation. The President shall set dates and times for Board of Directors meeting.  Directors may have invited guests present at any meeting so long as the Chief Rabbi/President has approved it.

The Secretary shall keep an accurate account of the minutes that were discussed at any Board of Directors meeting.  He/she then has to submit them at the next board meeting for discussion by the Board of Directors and approval by the President. Upon approval by the majority of the Board of Directors, the minutes shall be adopted, and all policy and procedure in them will continue to be enforced.

### Section 2: Special Meetings

The sole member must be notified in writing of any special meeting of the corporation with a minimum of 10 days prior to the meeting taking place.

The representative of the sole member shall attend any special meeting of Melek Tzadik Covenant Holdings, Inc. at his/her discretion.

Special meetings of the Board of Directors may be called by the President/chairperson of the Board of Directors, the vice-president, the secretary or by any two directors. Such meetings shall be held at the principal office of the corporation or, if different, at the place designated by the person or persons calling the special meeting.

### Section 3: Notice of Meetings

Unless otherwise provided by the articles of incorporation, these bylaws, or provisions of law, the following provisions shall govern the giving notice for meetings of the Board of Directors:

a. **Regular Meetings:** No notice need be given of any regular scheduled meeting of the Board of Directors.

b. **Special Meetings:** At least 10 days prior notice shall be given by the secretary of the corporation to each director of each special meeting of the Board of Directors. Such notice may be oral or written, may be given personally, by first class mail, by telephone, or by facsimile machine, or by email, and shall state the place, date and time of the meeting and the matters proposed to be acted upon at the meeting. In the case of facsimile notification the director to be contacted shall acknowledge personal receipt of the facsimile notice by return message or telephone call within twenty-four hours of the first facsimile transmission.

c. **Waiver of Notice:** Whenever any notice of a meeting is required to be given to any director of this corporation under provisions of the articles of incorporation, these bylaws, or the law of this state, a waiver of notice in writing signed by the director whether before or after the time of the meeting, shall be equivalent to the giving of such notice. Attendance of a Director at any meeting of the Board of Directors will constitute a waiver of notice of such meeting except where such Director attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

## Section 4: Quorum for Meetings

A quorum shall consist of a simple majority of the members of the Board of Directors including the President. Except as otherwise provided under state law, no business shall be considered by the Board of Directors at any meeting at which the required quorum is not present, and the only motion which the chairperson shall entertain at such meeting is a motion to adjourn.

## Section 5: Voting power

Each director shall be entitled to one vote and shall have equal voting power among all the other members of the Board of Directors.

## Section 6: Majority Action as Board Action

Every act or decision done or made by a unanimous vote of the directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors.

## Section 7: Action by unanimous written consent

Any action required or permitted to be taken by the Board of Directors under any provision of law may be taken without a meeting, if all members of the Board of Directors shall individually or collectively consent in writing to such action. Such written consent or consents shall be filed with the minutes of the proceedings of the Board of Directors. Such action by written consent shall have the same force and effect as the unanimous vote of the Directors. Any certificate or other document filed under any provision of law which relates to action so taken shall state that the action was taken by unanimous written consent of the Board of Directors without a meeting and that the Bylaws of this corporation authorize the Directors to so act and such statement shall be prima facie evidence of such authority.

**Section 8: Conduct of Meetings**

The president of the corporation shall preside over meetings of the Board of Directors.

Meetings shall be governed by the president, insofar as such rules are not inconsistent with or in conflict with the articles of incorporation, these bylaws, or with provisions of law.

# Article V Prohibited Activities

This corporation shall not engage in any activity not permitted by an organization exempt under 501(c)(2) of the Internal Revenue Code. This corporation is prohibited from engaging in activities which violate the written doctrines of the sole member. This corporation is also prohibited from condoning, promoting or allowing any of its assets to be used for activities that violate the written doctrines of the sole member.

# Article VI Property Of The Corporation

a.   Title to all property (real and personal) shall be vested in the corporation.

b.   No part of the net income or assets of this organization shall ever inure to the benefit of any director, officer or employee thereof or to the benefit of any private persons.

# Article VII Amendment Of Bylaws

Amendments to these bylaws may be made by a simple majority vote of the official Board of Directors, including the Chief Rabbi/President.

Signed and certified, to be effective immediately.

_____

President/Chairman of Melek Tzadik Covenant Holdings, Inc.


_____

Treasurer of Melek Tzadik Covenant Holdings, Inc.


_____

Secretary of Melek Tzadik Covenant Holdings, Inc.


_____10/16/15_____

Date



| | N |
|---|---|

# State of California
## Secretary of State

### Statement of Information
**(Domestic Nonprofit, Credit Union and Consumer Cooperative Corporations)**

**Filing Fee: $20.00. If this is an amendment, see instructions.**
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**F908371**

# FILED

In the office of the Secretary of State
of the State of California

## NOV-03 2015

**1.  CORPORATE NAME**

MELEK TZADIK COVENANT HOLDINGS, INC.

**2.  CALIFORNIA CORPORATE NUMBER**

C3835156

*This Space for Filing Use Only*

**Complete Principal Office Address**  (Do not abbreviate the name of the city. Item 3 cannot be a P.O. Box.)

| 3.  STREET ADDRESS OF PRINCIPAL OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 970 WEST VALLEY PKWY. #170, ESCONDIDO, CA 92025 | | | |

| 4.  MAILING ADDRESS OF THE CORPORATION | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 970 WEST VALLEY PKWY. #170, ESCONDIDO, CA 92025 | | | |

**Names and Complete Addresses of the Following Officers**  (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 5.  CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| BEN-HAYIL YELLEN | 970 WEST VALLEY PKWY. #170, ESCONDIDO, CA 92025 | | | |

| 6.  SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| HEIDI  CRAWFORD | 970 WEST VALLEY PKWY. #170, ESCONDIDO, CA 92025 | | | |

| 7.  CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| PATRICIA  WAGGERBY | 32768 VIA DEL VENADO, VALLEY CENTER, CA 92082 | | | |

**Agent for Service of Process**  If the agent is an individual, the agent must reside in California and Item 9 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 9 must be left blank.

| 8.  NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| BEN-HAYIL YELLEN |

| 9.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, **IF AN INDIVIDUAL**   CITY | STATE | ZIP CODE |
|---|---|---|
| 970 WEST VALLEY PKWY. #170, ESCONDIDO, CA 92025 | | |

**Common Interest Developments**

10. ☐ Check here if the corporation is an association formed to manage a common interest development under the Davis-Stirling Common Interest Development Act, (California Civil Code section 4000, et seq.) or under the Commercial and Industrial Common Interest Development Act, (California Civil Code section 6500, et seq.).  The corporation must file a Statement by Common Interest Development Association (Form SI-CID) as required by California Corporations Code sections 5405(a) and 6760(a).  Please see instructions on the reverse side of this form.

**11.  THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.**

| 11/03/2015 | BEN-HAYIL  YELLEN | PRESIDENT | _BYellen_ |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

| SI-100 (REV 01/2014) | | APPROVED BY SECRETARY OF STATE |
|---|---|---|

# COMMERCIAL LEASE AGREEMENT

This Commercial Lease Agreement ("Lease") is made and effective **09/09/2016**, by and between **Melek Tzadik Covenant Holdings** ("Landlord") and **Hebrew Conservative Union** ("Tenant").

Landlord is the owner of land and improvements commonly known and numbered as **32768 Via del Venado, Valley Center, CA 92082** and legally described as follows (the "Building"): **Residential House and Land**

Landlord makes available for lease a portion of the Building designated as **SFR 10 Acres located at 32768 Via del Venado, Valley Center, CA 92082** (the "Leased Premises"). Included in the Leased Premises are the assets listed in Exhibit A and Exhibit B attached this agreement.

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

THEREFORE, in consideration of the mutual promises herein, contained and other good and valuable consideration, it is agreed:

1. **Term**

A. Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning **09/09/2016** and ending **12/31/2020**. Landlord shall use its best efforts to give Tenant possession as nearly as possible at the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall abate for the period of delay. Tenant shall make no other claim against Landlord for any such delay.

B. Tenant may renew the Lease for one extended term of **Renewal Term**. Tenant shall exercise such renewal option, if at all, by giving written notice to Landlord not less than ninety (90) days prior to the expiration of the Initial Term. The renewal term shall be at the rental set forth below and otherwise upon the same convenants, conditions and provisions as provided in this Lease.

2. **Rental**

A. Tenant shall pay to Landlord during the Initial Term rental of **$5,726.00** per month, to be paid in full on the day of signing.

B. The rental for any renewal lease term, if created as permitted under this Lease, shall be **$5,726.00** per month to be paid in full on the day of renewal.

3. **Use**

Permitted Use Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

4. **Repairs**

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

## 5.  Alterations and Improvements

Tenant, at Tenant's expense, shall have the right following Landlord's consent to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

## 7.  Property Taxes

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Leased Premises.

## 8.  Insurance

A. If the Leased Premises or any other party of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

B. Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

C. Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the Building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $1,000,000.00 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord that a policy is due to expire at least (10) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the Building.

## 9.  Utilities

Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant

acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilizes excessive electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants.

## 10. Signs

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may refuse consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

## 11. Entry

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

## 12. Parking

During the term of this Lease, Tenant shall have the exclusive use of all automobile parking areas, driveways, and footways.

## 13. Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing. The initial rules for the Building are attached hereto as Exhibit "A" and incorporated herein for all purposes.

## 14. Damage and Destruction

Subject to Section 8 A. above, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control

3

and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

## 15. Default

If default shall at any time be made by Tenant in the payment of rent when due to Landlord as herein provided, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by Tenant, and such default shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord without correction thereof then having been commenced and thereafter diligently prosecuted, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises. Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity. Landlord shall use reasonable efforts to mitigate its damages.

## 16. Quiet Possession

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

## 17. Condemnation

If any legally, constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

## 18. Subordination

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgage may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building, and Tenant agrees upon demand to execute such further instruments subordinating this Lease or attorning to the holder of any such liens as Landlord may request. In the event that Tenant should fail to execute any instrument of subordination herein required to be executed by Tenant promptly as requested, Tenant hereby irrevocably constitutes Landlord as its attorney-in-fact to execute such instrument in Tenant's name, place and stead, it being agreed that such power is one coupled with an interest. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

**19. Notice**

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

**Melek Tzadik Covenant Holdings, 32768 Via del Venado, Valley Center, CA 92082**

If to Tenant to:

**Hebrew Conservative Union, 970 West Valley Parkway, #439, Escondido, CA 92025**

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

**20. Brokers**

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

**21. Waiver**

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

**22. Memorandum of Lease**

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

**23. Headings**

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

**24. Successors**

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

**25. Consent**

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

**26. Performance**

5

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lessor of twelve percent (12%) per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the unreimbursed balance plus accrued interest to Tenant on demand.

## 27. Compliance with Law

Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

## 28. Final Agreement

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

| Date: _9/9/16_ | Tenant: _Melek Tzadik Covenant Holdings_ <br><br> By: _Ben-Hayil Yellen – BYellen_ <br><br> Printed Name: _Ben-Hayil Yellen_ <br><br> Title: _President_ |
|---|---|
| Date: _9/9/16_ | Landlord: _Hebrew Conservative Union_ <br><br> By: _Heidi S. Crawford_ <br><br> Printed Name: _Heidi Crawford_ <br><br> Title: _Secretary_ |

# Melek Tzadik Covenant Holdings

## Financial Statement of 2017

| Category | Expenses | Category | Income |
|---|---|---|---|
| Water | 273.99 | Income: | 5,726 |
| Electricity | 200.00 | | |
| Auto Insurance | 138.07 | | |
| Farmers Insurance | 178.16 | | |
| Travel | 200.00 | | |
| Internet | 44.94 | | |
| Edco | 65.93 | | |
| Kiddush | 300.00 | | |
| Wells Fargo Mortgage | 3,844.57 | | |
| **Total Balance:** | **5195.66** | **Total Balance:** | **5,726** |



# FARMOWNERS POLICY
## AMENDMENT SUMMARY – PLEASE READ CAREFULLY

**NATIONWIDE AGRIBUSINESS INSURANCE -NAIC**
**1100 LOCUST ST DEPT 3000**
**DES MOINES, IA 50391-3000**

| | | |
|---|---|---|
| Policy Number: **FPK FMPN 78 6 0707289** | | |
| Policy Effective From **09/08/17** To **09/08/18** | 12:01 A.M. Standard Time | |
| Transaction Effective **09/08/17** | 12:01 A.M. Standard Time | |

Named Insured: **WARREN & PATRICIA WAGGERBY**

Mailing Address: **32768 VIA DEL VENADO**

**VALLEY CENTER      CA      92082-3502**

Agency: **ALTA VISTA INSURANCE AGENCY      51026**

**VISTA CA      92085**

### *** THE FOLLOWING CHANGES WERE MADE ***

| Description of Changes | Premium |
|---|---|
| **CHANGE POLICY RATING INFORMATION** | **$101.00** |
| From: Membership Paid Indicator: Y<br>To:   Membership Paid Indicator: N | |
| From: Membership Code: CAFB<br>To:   Membership Code: CAFB | |
| **DELETE ENDORSEMENT FORM** | **$0.00** |
| Form: FO70720     11-14 | |
| **CALFARM ENDORSEMENT** | |
| **ADD ENDORSEMENT FORM** | **$0.00** |
| Form: IN7781     10-14 | |
| **IMPORTANT NOTICE - REMOVING MEMBERSHIP FORM** | |
| **TOTAL PREMIUM** | **$101.00** |

### ** THIS IS NOT A BILL – SEE YOUR BILLING STATEMENT. **

8109 01 06 00

MEMB      100917      INSURED'S COPY      FPK FMPN7807072896      821531788      47  0003746

## LEGEND

**Roof Type:**

| | |
|---|---|
| Wood Shake | W |
| Hail Resistant | H |
| Metal Roof with Metal Siding | M |
| Metal Roof with Other Than Metal Siding | P |
| Other | O |

**Protective Device Credit:**

| | |
|---|---|
| None | 00 |
| 1 Smoke Detectors, Dead Bolts, Heat Detector, and Fire Extinguisher | 01 |
| 2 Local Burglar Alarm | 02 |
| 3 Local Fire Alarm | 03 |
| 4 Central Station Burglary Alarm | 04 |
| 5 Central Station Fire Alarm | 05 |
| 6 Partial Sprinkler System | 06 |
| 7 Total Sprinkler System | 07 |
| 1 and 6 | 08 |
| 1 and 7 | 09 |
| 2 and 3 | 10 |
| 2 and 5 | 11 |
| 2 and 6 | 12 |
| 2 and 7 | 13 |
| 3 and 4 | 14 |
| 3 and 6 | 15 |
| 3 and 7 | 16 |
| 4 and 5 | 17 |
| 4 and 6 | 18 |
| 4 and 7 | 19 |
| 5 and 6 | 20 |
| 5 and 7 | 21 |
| 2,3, and 6 | 22 |
| 2,3, and 7 | 23 |
| 4,5, and 6 | 24 |
| 4,5, and 7 | 25 |
| 8 Wrought Iron Bars on all Doors & Windows | 26 |
| 2 and 8 | 27 |
| 4 and 8 | 28 |
| 9 Permanent Storm Shutters or Impact Resistant Glass | 29 |
| 10 Permanent Storm Shutters and Impact Resistant Glass | 30 |

**Auxiliary Heating Surcharge:**

| | |
|---|---|
| Wood/Solid Fuel Stove | S |
| Wood/Solid Fuel Furnace | F |
| Exterior Unit | E |
| Other | O |
| None | N |

**Ordinance or Law:**

| | |
|---|---|
| Yes | Y |
| (Where Applicable – Regular) | R |
| (Where Applicable – Broad) | B |
| No | N |

**Earthquake Coverage:**

| | |
|---|---|
| Earthquake Coverage Only | EQ |
| Earthquake with Retrofit Coverage | ER |
| Earthquake with Engineering Coverage | EE |
| Earthquake w/ Retrofit and Engineering Cov | EB |
| Limited Earthquake Coverage Only | LQ |
| Limited Earthquake with Retrofit Coverage | LR |
| Limited Earthquake with Engineering Coverage | LE |
| Limited Earthquake with Retrofit and Engineering Coverage | LB |
| No Earthquake Coverage | NO |

**Occupancy Type:**

| | |
|---|---|
| Owner Occupied - Primary | O |
| Owner Occupied – Additional | A |
| Tenant Occupied | T |
| Seasonally Occupied | S |
| Guest House | G |
| Vacant | V |
| Course of Construction | C |
| Condo & Rented | R |
| Hobby | H |

**Replacement Cost Coverage:**

| | |
|---|---|
| Actual Cash Value | A |
| ACV Dwelling / RC Contents | B |
| Functional RC | F |
| Functional RC Dwelling / RC Cont | G |
| Replacement Cost | R |
| RC Dwelling / RC Cont | S |
| Utility Value | U |
| Utility Dwelling / RC Cont | V |
| Extended Replacement Cost | E |
| Extended Replacement Cost – 125% | L |
| Extended Replacement Cost – 150% | C |
| Agreed Value | D |

**Cost of Construction;**
**Cosmetic Loss Exclusion (Cosm Loss);**
**Mine Sub ALE Waived:**

| | |
|---|---|
| Yes | Y |
| No | N |

**Wind Excl:**

| | |
|---|---|
| Excluded (Applicable code varies by state & class code) | E W X |
| Not Excluded – Mitigation Factor Applies | M |
| Not Excluded | N |

8105 09 05 10

FPK  FMPN 78 6 0707289                    INSURED'S COPY

## FARM PROPERTY SCHEDULE A

| Loc/ Item | Year | Item Description | Limit | Class | Deductible | | Const Type | Premium |
|---|---|---|---|---|---|---|---|---|
| | | | | | Other | W & H | | |
| 001/001 | 1972 | OWNER OCCUPIED DWELLING-1900 SF | 497,439 | 11351 | 1,000 | 1,000 | MASON | 1722 |
| 001 | | COV B - OTHER PRIVATE STRUCT | 49,743 | 99996 | 1,000 | 1,000 | | |
| 001 | | COV D - LOSS OF USE (ALS) | | 99997 | | | | |
| 002 | | HOUSEHOLD PERSONAL PROPERTY | 348,208 | 21301 | 1,000 | 1,000 | MASON | |
| 003 | | 20,000 GAL/WATER TANK SYSTEM | 20,000 | 33212 | 1,000 | 1,000 | FRAME | 72 |
| | | WITH TWO BLADDERS | | | | | | |

8104 (01-01) 03                         Total        915,390

FPK  FMPN 78 6 0707289                                 INSURED'S COPY

## FARM PROPERTY SCHEDULE B

| Loc/ Item | Item Description | Cause Of Loss | Class/ Coverage | | Roof Type | Prot Device | Aux Heat | EQ Cov | Occup Type | Repl Cost | Cost of Const. | Ord & Law |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001/001 001 001 002 003 | OWNER OCCUPIED COV B - OTHER P COV D - LOSS OF HOUSEHOLD PERSO 20,000 GAL/WATE WITH TWO BLADDE | SPECIAL<br><br>BROAD BASIC | 11351 99996 99997 21301 33212 | A B D C G | O<br><br>O | 17<br><br>00 00 | N<br><br>N N | NO<br><br>NO NO | O<br><br>O H | S<br><br>R A | Y<br><br>Y N | Y<br><br>N N |

8105 09 05 10

FPK  FMPN 78 6 0707289                          INSURED'S COPY

FORM 8110
ADDITIONAL INFORMATION SUPPLEMENTAL DECLARATIONS

| Form | DESCRIPTION |
|------|-------------|
| FP70582 | LIMITED FUNGI OR BACTERIA COVERAGE ENDORSEMENT - PROPERTY LIMIT: $10,000 |

8110 (01-01) 00

*Exhibit B*

INTERNAL REVENUE SERVICE                              DEPARTMENT OF THE TREASURY
P. O. BOX 2508
CINCINNATI, OH  45201

Date:  APR 13 2016

                                        Employer Identification Number:
                                         47-4755444
                                        DLN:
                                         17053061411016
MELEK TZADIK COVENANT HOLDINGS INC      Contact Person:
970 W VALLEY PKY 170                     JAMIE N HEITBRINK        ID# 31644
ESCONDIDO, CA  92025                    Contact Telephone Number:
                                         (877) 829-5500
                                        Accounting Period Ending:
                                         December 31
                                        Form 990/990-EZ/990-N Required:
                                         Yes
                                        Effective Date of Exemption:
                                         October 16, 2015
                                        Contribution Deductibility:
                                         No
                                        Addendum Applies:
                                         No

Dear Applicant:

We're pleased to tell you we determined you're exempt from federal income tax
under Internal Revenue Code (IRC) Section 501(c)(2). This letter could help
resolve questions on your exempt status. Please keep it for your records.

If we indicated at the top of this letter that you're required to file
Form 990/990-EZ/990-N, our records show you're required to file an annual
information return (Form 990 or Form 990-EZ) or electronic notice (Form 990-N,
the e-Postcard). If you don't file a required return or notice for three
consecutive years, your exempt status will be automatically revoked.

If we indicated at the top of this letter that an addendum applies, the
enclosed addendum is an integral part of this letter.

For important information about your responsibilities as a tax-exempt
organization, go to www.irs.gov/charities. Enter "4221-NC" in the search bar
to view Publication 4221-NC, Compliance Guide for Tax-Exempt Organizations
(Other than 501(c)(3) Public Charities and Private Foundations), which
describes your recordkeeping, reporting, and disclosure requirements.

                    Sincerely,

                    Jeffrey I. Cooper
                    Director, Exempt Organizations
                    Rulings and Agreements

                                        Letter  948

State of California
**Franchise Tax Board**
PO Box 1286
Rancho Cordova CA 95741-1286

MELEK TZADIK COVENANT HOLDINGS, INC.
970 WEST VALLEY PKWY # 170
ESCONDIDO CA 92025

Date:          09.21.17
Case:          26600639389704530
Case Unit:     26600639389704533
In reply refer to: 760:NVR:F120

Regarding                    : Tax-Exempt Status
Organization's Name          : MELEK TZADIK COVENANT HOLDINGS, INC.
CCN                          : 3835156
Purpose                      : Title holding for Ã§23701d
R&TC §                       : 23701h
Form of Organization         : Incorporated
Accounting Period Ending     : 12/31
Tax-Exempt Status Effective  : 10/16/2015

# Exempt Determination Letter

We have determined the organization is tax-exempt from California franchise or income tax as stated in the above Revenue and Taxation Code (R&TC) section (§).

To retain tax-exempt status, the organization must be organized and operating for nonprofit purposes within the provisions of the above R&TC section. An inactive organization is not entitled to tax-exempt status.

We have based our decision on the information submitted and the assumption that the organization's present operations will continue unchanged or conform to those proposed in the organization's application. In order for us to determine any affect on the tax-exempt status, the organization must immediately report to us any change in:

- Operation
- Character
- Purpose
- Name
- Address

Our determination may no longer be applicable, if these changes occur:

- Material facts or circumstances relating to the organization application.
- Relevant statutory, administrative, or judicial case law.
- Federal interpretation of federal law in cases where our decision was based on such interpretation.

FTB 9941 PASS (REV 03-2013)      Exempt Application\Correspondence \
                                 LTR 003 - EDL

Page 2 of 2

It is the organization's responsibility to be aware of these changes should they occur. This paragraph constitutes written advice, other than a chief counsel ruling, within the meaning of R&TC §21012(a)(2).

For filing requirements, get Pub. 1068, *Exempt Organizations - Filing Requirements and Filing Fees*. Go to **ftb.ca.gov** and search for **1068**.

This exemption is for state franchise or income tax purposes only. For information regarding sales tax exemption, contact the State Board of Equalization at 800.400.7115, or go to their website at **boe.ca.gov**.

Neil V. Riehle
Telephone: 916.845.4171
Fax: 916.843.2486